**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK**

AMSAA ALQAISSI

HAIMAN BAKIR SUDKI
ABDULHAMEED

IMAN HAIMAN BAKIR SUDKI

   *Petitioner*,

     v.

DONALD TRUMP, President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); U.S. CUSTOMS AND BORDER PROTECTION ("CBP"); JOHN KELLY, Secretary of DHS; KEVIN K. MCALEENAN, Acting Commissioner of CBP; and JAMES T. MADDEN, New York Field Director, CBP,

   *Respondents*.

Case No. _____

Date: January 28, 2017

**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

1

## INTRODUCTION

1. Petitioners ASMAA ALQAISSI, HAIMAN BAKIR SUDKI ABDULHAMEED, IMAN HAIMAN BAKIR SUDKI, [two Iraqi nationals who have diversity visas to the United States], landed at [JFK International Airport] on [January 28, 2017]. Petitioners were granted a [diversity visa,] on [31 August, 2016] as a result of winning the diversity lottery. After conducting standard procedures of administrative processing and security checks, the federal government has deemed the Petitioners not to pose threats to the United States.

Despite these findings and Petitioner's valid entry documents, U.S. Customs and Border Protection ("CBP") blocked Petitioner from exiting [name of airport] and detained Petitioner therein. No magistrate has determined that there is sufficient justification for the continued detention of Petitioner. Instead, CBP is holding Petitioner at [name of airport] solely pursuant to an executive order issued by President Donald Trump on January 27, 2017.

Because the executive order is unlawful as applied to Petitioner, their continued detention based solely on the executive order violates their Fifth Amendment procedural and substantive due process rights, violates the First Amendment Establishment Clause, is ultra vires under the immigration statutes, and violates the Administrative Procedure Act and Religious Freedom Restoration Act. Further, Petitioners continued unlawful detention is part of a widespread policy, pattern, and practice applied to many refugees and arriving aliens detained after the issuance of the January 27, 2017 executive order. Therefore, Petitioner respectfully applies to this Court for a writ of habeas corpus to remedy their unlawful detention by Respondents, and for declaratory

and injunctive relief to prevent such harms from recurring. Petitioner act on their own behalf and acts through their Next Friend, Asmaa AlQaissi, wife and mother of. Petitioners Asmaa AlQaissi is Petitioners' wife and mother. Because Petitioner cannot secure access either to legal counsel or to the courts of the United States, Asmaa AlQaissi acts as Petitioner's Next Friend. [citation to Exhibit A, Affidavit of Asmaa AlQaissi].

## JURISDICTION AND VENUE

2. Jurisdiction is conferred on this court by 28 U.S.C. §§ 1331, 1361, 2241, 2243, and the Habeas Corpus Suspension Clause of the U.S. Constitution. This court has further remedial authority pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

3. Venue properly lies within the Eastern District of New York because a substantial part of the events or omissions giving rise to this action occurred in the District. 28 U.S.C. § 1391(b).

4. No petition for habeas corpus has previously been filed in any court to review Petitioner's case.

## PARTIES

5. Petitioners are Iraqi nationals mother, father and daughter to one another. They won the diversity lottery and received visas to enter the United States in August of 2016. Petitioners boarded a flight originating from Doha, Qatar on 27 January, 2017. The flight arrived in JFK Airport on January 28, 2017 at 7:00 a.m. Petitioners were detained by CBP the time they arrived until 7:00p.m. Thereafter, only petitioner Asmaa Alqaissi was released. Her husband and

daughter remained detained and were informed that they would be put on a flight back to Doha, Qatar leaving at 9:30p.m. on January 28, 2017.

6. Asmaa AlQaissi arrived on the same plane with Petitioners. Because Petitioners cannot secure access either to legal counsel or to the courts of the United States, Asmaa AlQaissi acts as Petitioner's Next Friend. Exhibit a, Affidavit of Asmaa AlQaissi.

7. As Soon as Asmaa AlQaissi arrived, she was in the detention area with her daughter and husband. Asmaa AlQaissi was told to leave after nearly 10 hours of detention

8. The U.S. Department of Homeland Security ("DHS") is a cabinet department of the United States federal government with the primary mission of securing the United States.

9. U.S. Customs and Border Protection ("CBP") is an agency within DHS with the primary mission of detecting and preventing the unlawful entry of persons and goods into the United States.

10. Respondent John Kelly is the Secretary of DHS. Secretary Kelly has immediate custody of Petitioners. He is sued in his official capacity.

11. Respondent Kevin K. McAleenan is the Acting Commissioner of CBP. Acting Commissioner McAleenan has immediate custody of Petitioners. He is sued in his official capacity.

12. Respondent James T. Madden is the Director of the New York Field Office of CBP, which has immediate custody of Petitioners. He is sued in his official capacity.

13. Respondent Donald Trump is the President of the United States. He is sued in his official capacity.

**STATEMENT OF FACTS**

**President Trump's January 27, 2017 Executive Order**

14. On January 20, 2017, Donald Trump was inaugurated as the forty-fifth President of the United States.

15. One week later, on January 27, President Trump signed an executive order entitled, "Protecting the Nation from Foreign Terrorist Entry into the United States," which is attached hereto as Exhibit A and is hereinafter referred to as the "EO."

16. Citing the threat of terrorism committed by foreign nationals, the EO directs a variety of changes to the manner and extent to which non-citizens may seek and obtain admission to the United States, particularly (although not exclusively) as refugees. Among other things, the EO imposes a 120-day moratorium on the refugee resettlement program as a whole; proclaims that "that the entry of nationals of Syria as refugees is detrimental to the interests of the United States," and therefore "suspend[s]" indefinitely their entry to the country; similarly proclaims that "the entry of more than 50,000 refugees in fiscal year 2017 would be detrimental to the interests" of the country.

17. Most relevant to the instant action is Section 3(c) of the EO, in which President Trump proclaims "that the immigrant and nonimmigrant entry into the United States of aliens from countries referred to in section 217(a)(12) of the INA, 8 U.S.C. 1187(a)(12), would be detrimental to the interests of the United States," and that he is therefore "suspend[ing] entry into the United States, as immigrants and nonimmigrants, of such persons for 90 days from the date of this order," with narrow exceptions not relevant here.

18. There are seven countries that fit the criteria in 8 U.S.C. § 1187(a)(12): Iraq, Iran, Libya, Somalia, Sudan, Syria, and Yemen. According to the terms of the EO, therefore, the "entry into the United States" of non-citizens from those countries is "suspended" from 90 days from the date of the EO.

**Petitioners**

19. Petitioners HAIMAN BAKIR SUDKI ABDULHAMEED and IMAN HAIMAN BAKIR SUDKI are Iraqi nationals.

20. Petitioner Iman Haiman Bakir Sudki is a minor of 17 years.

21. Petitioners won the diversity lottery and were granted visas on August 31, 2016.

22. On January 27, 2017, Petitioners boarded a flight from Doha, Qatar to New York. Petitioners arrived at JFK on January 28, 2017 at 6:30a.m. All petitioners were then detained by CBP from 7:00am to 7:00p.m.

23. Petitioners HAIMAN BAKIR SUDKI ABDULHAMEED and IMAN HAIMAN BAKIR SUDKI remained detained while ASMA ALQAISSI was released.

24. ASMA ALQAISSI is a Qatari national whereas her husband and daughter are Iraqi nationals.

25. Petitioners HAIMAN BAKIR SUDKI ABDULHAMEED and IMAN HAIMAN BAKIR SUDKI were informed that they would put back on a plane to Qatar.

26. Petitioners are not being permitted to meet with their attorneys who are present at JFK and have made multiple attempts to meet with them.

6

27. Upon knowledge and belief, Petitioners remains in the custody of CBP at JFK Airport.

28. Upon knowledge and belief, Petitioners is not being permitted to apply for asylum or other forms of protection from removal.

29. Upon knowledge and belief, Petitioners is at imminent risk of being returned to Iraq against their will, and despite the grave danger they face there.

## CAUSES OF ACTION

### COUNT ONE
### FIFTH AMENDMENT – PROCEDURAL DUE PROCESS
### DENIAL OF RIGHT TO APPLY FOR ASYLUM

1. Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

2. Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of liberty interests protected under the Due Process Clause of the Fifth Amendment. Additionally, due process requires that arriving immigrants be afforded those statutory rights granted by Congress and the principle that "[m]inimum due process rights attach to statutory rights." *Dia v. Ashcroft*, 353 F.3d 228, 239 (3d Cir. 2003) (alteration in original) (quoting *Marincas v. Lewis*, 92 F.3d 195, 203 (3d Cir. 1996)).

3. The United States government is obligated by United States and international law to hear the asylum claims of noncitizens presenting themselves at United States borders and ports of entry. The Immigration and Nationality Act provides that "[a]ny alien who is physically present in the United States or who arrives in the United States . . . irrespective of such alien's

status, may apply for asylum in accordance with this section or, where applicable, section 235(b)." 8 U.S.C. § 1158(a)(1); *see also id.* § 1225(b)(1)(A)(ii).

4. Congress has given asylum seekers the right to present evidence to an Immigration Judge, 8 U.S.C. § 1229a(b)(4)(B), the right to move to reconsider any decision that the applicant is removable, 8 U.S.C. § 1229a(c)(5), and the right to judicial review by a court of appeals of final agency orders denying asylum on the merits and directing removal, 8 U.S.C. § 1252(a)(2)(B)(ii).

5. Consistent with these United States statutory and international law obligations, individuals arriving at United States ports of entry must be afforded an opportunity to apply for asylum or other forms of humanitarian protection and be promptly received and processed by United States authorities.

6. Having presented themselves at a United States port of entry, Petitioner is entitled to apply for asylum and to be received and processed by United States authorities.

7. Respondents' actions in denying Petitioners the opportunity to apply for asylum, taken pursuant to the EO, violate the procedural due process rights guaranteed by the Fourteenth Amendment.

**COUNT TWO**
**FIFTH AMENDMENT – PROCEDURAL DUE PROCESS**
**DENIAL OF RIGHT TO WITHHOLDING/CAT PROTECTION**

8. Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

9. Under United States law as well as human rights conventions, the United States may not return ("*refoul*") a noncitizen to a country where she may face torture or persecution. *See* 8 U.S.C. § 1231(b); United Nations Convention Against Torture ("CAT"), implemented in the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681, 2681-822 (1998) (codified as Note to 8 U.S.C. § 1231).

10. Respondents' actions in seeking to return Petitioners to Iraq taken pursuant to the EO, deprive Petitioners of their rights under 8 U.S.C. § 1231(b) and the Convention Against Torture without due process of law.

## COUNT THREE
## FIRST AMENDMENT – ESTABLISHMENT CLAUSE

11. Petitioners repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

12. The EO exhibits hostility to a specific religious faith, Islam, and gives preference to other religious faiths, principally Christianity. The EO therefore violates the Establishment Clause of the First Amendment by not pursuing a course of neutrality with regard to different religious faiths.

## COUNT FOUR
## THE IMMIGRATION AND NATIONALITY ACT, THE CONVENTION AGAINST TORTURE, THE FOREIGN AFFAIRS REFORM AND RESTRUCTURING ACT OF 1998, IMPLEMENTING REGULATIONS [*ACCARDI* DOCTRINE]

13. Petitioners repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

14. The Immigration and Nationality Act and implementing regulations, including 8 U.S.C. § 1225(b)(1) (expedited removal), 8 C.F.R. §§ 235.3(b)(4), 208.30, and 1003.42; 8 U.S.C. § 1158 (asylum), and 8 U.S.C. § 1231(b)(3) (withholding of removal), and the United Nations Convention Against Torture ("CAT"), implemented in the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub.L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681, 2681-822 (1998) (codified at 8 U.S.C. § 1231 note), entitle Petitioner to an opportunity to apply for asylum, withholding of removal, and CAT relief. These provisions also entitle Petitioner to a grant of withholding of removal and CAT relief upon a showing that he/she meets the applicable legal standards. Respondents' actions in seeking to return Petitioner to Iraq, taken pursuant to the EO, deprive Petitioner of his/her statutory and regulatory rights.

15. Respondents' actions in seeking to expel Petitioner, taken pursuant to the EO, deprives Petitioner of his/her statutory and regulatory rights in violation of *Accardi v. Shaughnessy*, 347 U.S. 260 (1954). Respondents' failure to follow the required regulations prejudicially deprived plaintiffs of fundamental due process and statutory rights, and this denial of process was so egregious as to shock the conscience.

## COUNT FIVE
## FIFTH AMENDMENT – EQUAL PROTECTION

16. Petitioners repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

17. The EO discriminates against Petitioner on the basis of his/her country of origin and religion, without sufficient justification, and therefore violates the equal protection component of the Due Process Clause of the Fifth Amendment.

18. Additionally, the EO was substantially motivated by animus toward—and has a disparate effect on—Muslims, which also violates the equal protection component of the Due Process Clause of the Fifth Amendment. *Jana-Rock Const., Inc. v. N.Y. State Dep't of Econ. Dev.*, 438 F.3d 195, 204 (2d Cir. 2006); *Hunter v. Underwood*, 471 U.S. 222 (1985).

19. Respondents have demonstrated an intent to discriminate against Petitioner on the basis of religion through repeated public statements that make clear the EO was designed to prohibit the entry of Muslims to the United States. *See* Michael D. Shear & Helene Cooper, *Trump Bars Refugees and Citizens of 7 Muslim Countries,* N.Y. Times (Jan. 27, 2017), ("[President Trump] ordered that Christians and others from minority religions be granted priority over Muslims."); Carol Morello, *Trump Signs Order Temporarily Halting Admission of Refugees, Promises Priority for Christians*, Wash. Post (Jan. 27, 2017).

20. Applying a general law in a fashion that discriminate on the basis of religion in this way violates Petitioner's rights to equal protection the Fifth Amendment Due Process Clause. *Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999); *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886). Petitioner satisfies the Supreme Court's test to determine whether a facially neutral law – in the case, the EO and federal immigration law – has been applied in a discriminatory fashion. The Supreme Court requires an individual bringing suit to challenge the application of a law bear the burden of demonstrating a "prima facie case of discriminatory purpose."*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-7 (1977). This

test examines the impact of the official action, whether there has been a clear pattern unexplainable on other grounds besides discrimination, the historical background of the decision, the specific sequence of events leading up to the challenged decision, and departures from the normal procedural sequence. *Id.*

21. Here, President Donald Trump and senior staff have made clear that EO will be applied to primarily exclude individuals on the basis of their national origin and being Muslim. *See, e.g.*, Donald J. Trump, *Donald J. Trump Statement On Preventing Muslim Immigration*, (Dec. 7, 2015), https://www.donaldjtrump.com/press-releases/donald-j.-trump-statement-on-preventing-muslim-immigration ("Donald J. Trump is calling for a total and complete shutdown of Muslims entering the United States until our country's representatives can figure out what is going on."); Abby Phillip and Abigail Hauslohner, *Trump on the Future of Proposed Muslim Ban, Registry: 'You know my plans'*, Wash. Post (Dec. 22, 2016). Further, the President has promised that preferential treatment will be given to Christians, unequivocally demonstrating the special preferences and discriminatory impact that the EO has upon Petitioner. *See supra.*

22. Thus, Respondents have applied the EO with forbidden animus and discriminatory intent in violation of the equal protection of the Fifth Amendment and violated Petitioner's equal protection rights.

**COUNT SIX**
**ADMINISTRATIVE PROCEDURE ACT**

23. Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

24.     Respondents detained and mistreated Petitioner solely pursuant to an executive order issued on January 27, 2017, which expressly discriminates against Petitioner on the basis of their country of origin and was substantially motivated by animus toward Muslims. *See supra* Count Five.

25.     The EO exhibits hostility to a specific religious faith, Islam, and gives preference to other religious faiths, principally Christianity.

26.     The INA forbids discrimination in issuance of visas based on a person's race, nationality, place of birth, or place of residence. 8 U.S.C. § 1152(a)(1)(A).

27.     The INA and implementing regulations, including 8 U.S.C. § 1225(b)(1) (expedited removal), 8 C.F.R. §§ 235.3(b)(4), 208.30, and 1003.42; 8 U.S.C. § 1158 (asylum), and 8 U.S.C. § 1231(b)(3) (withholding of removal), and the United Nations Convention Against Torture ("CAT"), implemented in the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub.L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681, 2681-822 (1998) (codified at 8 U.S.C. § 1231 note), entitle Petitioner to an opportunity to apply for asylum, withholding of removal, and CAT relief.

28.     Respondents' actions in detaining and mistreating Petitioner were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of APA § 706(2)(A); contrary to constitutional right, power, privilege, or immunity, in violation of APA § 706(2)(B); in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of APA § 706(2)(C); and without observance of procedure required by law, in violation of § 706(2)(D).

**COUNT SEVEN**

## RELIGIOUS FREDOM RESTORATION ACT

29. Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

30. The EO will have the effect of imposing a special disability on the basis of religious views or religious status, by withdrawing an important immigration benefit principally from Muslims on account of their religion. In doing so, the EO places a substantial burden on Petitioner's exercise of religion in a way that is not the least restrictive means of furthering a compelling governmental interest.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Petitioner prays that this Court grant the following relief:

(1)  Issue a Writ of Habeas Corpus requiring Respondents to release Petitioner;

(2)  Issue an injunction ordering Respondents not to detain any individual solely on the basis of the EO;

(3)  Enter a judgment declaring that Respondents' detention of Petitioners and will be unauthorized by statute and contrary to law;

(4)  Award Petitioner reasonable costs and attorney's fees; and

(5)  Grant any other and further relief that this Court may deem fit and proper.

DATED: January 28, 2017
Brooklyn, New York

          Respectfully submitted,


          Tahanie A. Aboushi. Esq.
          Noam K. Biale, Esq.
          The Aboushi Law Firm, PLLC.
          1441 Broadway Suite 5036
          New York, New York 10018
          Telephone (212) 391-8500
          Facsimile: (212) 391-8508