## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF NEW YORK

ASMAA ALQAISSI, HAIMAN BAKIR
SUDKI ABDULHAMEED AND IMAN
HAIMAN BAKIR SUDKI

        *Petitioners*,

              v.

DONALD TRUMP, President of the United
States; U.S. DEPARTMENT OF
HOMELAND SECURITY ("DHS"); U.S.
CUSTOMS AND BORDER PROTECTION
("CBP"); JOHN KELLY, Secretary of DHS;
KEVIN K. MCALEENAN, Acting
Commissioner of CBP; and JAMES T.
MADDEN, New York Field Director, CBP,

        *Respondents*.

Case No. 17-cv-00487

Date: January 29, 2017


## PETITIONERS MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR An EMERGENCY PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER


Respectfully submitted,

THE ABOUSHI LAW FIRM, PLLC.

  /s/
By: Tahanie A. Aboushi, Esq.
1441 Broadway, Suite 5036
New York, New York 10018
Telephone: (212) 391-8500
Facsimile: (212) 391-8508
Tahanie@aboushi.com

0

## PRELIMINARY STATEMENT

Petitioners Haiman Bakir Sudki AbdulHameed ("AbdulHameed") and Iman Hairman

Bakir Sudki ("Sudki") collectively, the "Petitioners", as well as Asmaa Alqaissi ("Alqaissi"),

respectfully submits this Memorandum of Law for its Motion for an Emergency Preliminary

Injunction and Temporary Restraining Order (the "Motion") prohibiting Respondents' continued

detention of Petitioners; staying the removal of Petitioners from the United States; and enjoining

Respondents from preventing Petitioners from accessing their counsel.  As set forth herein, the

Motion should be granted in its entirety, along with any such further relief the Court deems just

and proper.

## STATEMENT OF FACTS

Petitioners AbdulHameed and Sudki are Iraqi Nationals.  AbdulHameed and Alqaissi are

married, and Sudki is their daughter.  On August 31, 2016, Petitioners and Alqaissi were selected

under the Diversity Immigrant Visa Program and permitted to apply for legal permanent

residence status in the United States.  Their application was subsequently approved, and they

were granted immigrant visas to enter the US and apply for adjustment of status.  As such, on

January 28, 2017, Petitioners and Alqaissi arrived at John F. Kennedy Airport from Qatar at

approximately 6:30 a.m. with valid immigrant visas.  However, they were detained upon arrival.

At approximately 7:00 p.m., Alqaissi was released, while her husband and daughter remained

detained.  Alqaissi was informed that her husband and daughter would be returned to Qatar on a

flight leaving at 9:30 p.m.

Counsel for Petitioners, upon learning that AbdulHameed and Sudki were being detained

at JFK Terminal 4, immediately filed a habeas petition in this Court, seeking an order releasing

1

Petitioners from custody and prohibiting Customs and Border Protection ("CBP") from removing Petitioners from the country.  Consistent with this Court's order of January 28, 2017, Petitioners ultimately were not put on the 9:30 p.m. flight to Qatar, but remained detained at Terminal 4.

Petitioners' counsel attempted to meet her clients in the Terminal.  However, New York State Police ("NYSP") and Port Authority Police ("PAP") blocked counsel's access to Petitioners, by standing in uniform, aligning themselves shoulder to shoulder and forming a barrier that prevented all persons from entering the public space of Terminal 4.

Counsel approached both NYSP and PAP and produced an attorney service pass issued by the Southern District of New York and a Secure Pass issued by the New York State Unified Court System.  Upon counsel's presentation of these credentials, both NYSP and PAP denied counsel entry, explaining that they had received orders that persons, *and particularly attorneys*, were not permitted to enter the public space.  Counsel informed NYSP and PAP that a Writ of Habeas Corpus had been filed to prevent Petitioners unlawful detention and that she was seeking access to her clients; NYSP and PAP nonetheless denied the undersigned access to Petitioners.  Counsel then spoke with CBP and requested access to Petitioners. Despite multiple efforts, counsel was denied access to Petitioners and was not permitted to enter the public space of Terminal 4.  As a result of NYSP, PAP and CBP, counsel has not been able to meet with Petitioners and Petitioners' have been denied access to their attorney.

Given Petitioners' continued unlawful detention, and their inability to access counsel in relation to their pending habeas corpus petition, an extraordinary remedy of injunctive relief is necessary.

## ARGUMENT

In the Second Circuit, a party seeking a preliminary injunction must demonstrate that (1) it is likely to suffer irreparable harm absent injunctive relief; (2) it is likely to succeed on the merits; (3) the balance of the equities tips in its favor; and (4) the public's interest weighs in favor of granting the injunction.  *Winter v. Natural Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015).  It is the movant's burden to establish these elements "by a clear showing."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

"Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."  *Rodriguez ex rel. Rodriguez v. DeBuono,* 175 F.3d 227, 233-34 (2d Cir. 1999) (internal quotation marks and citations omitted); *see also Iron Mountain Info. Mgmt., Inc. v. Taddeo*, 455 F.Supp.2d 124, 13 (E.D.N.Y. 2006) ("The law in this circuit requires a showing that irreparable damages are likely, not merely possible.").  The threat of injury must be "actual and imminent."  *Rodriguez*, 175 F.3d at 234.  Here, Petitioners have filed a Writ of Habeas Corpus and are being detained while legal proceedings that may determine the course of the remainder of their lives are underway. While detained and without access to their counsel, Petitioners were coerced to sign documents that upon information and belief voluntarily withdrew their application for admission to the United States in lieu of a formal determination concerning their admissibility.  Said consent forms purport to have the effect of canceling what would otherwise be valid visas, potentially rendering Petitioners inadmissible to re-enter the United States.

Petitioners will unquestionably be irreparably harmed if, contrary to this Court's order,

3

they are transferred out of the country.  Moreover, Petitioners' continued unlawful detention, in

violation of the Due Process Clause of the Fifth Amendment and the Immigration and

Nationality Act of 1965, causes ongoing trauma, damage, and loss of liberty.  Finally,

Petitioners' right to access their counsel during their detention is beyond debate.  "The Court has

an obligation to assure that those seeking to challenge their Executive detention by petitioning

for habeas relief have adequate, effective and meaningful access to the courts. . . . [A]ccess to the

courts means nothing without access to counsel." *In re Guantanamo Bay Detainee Continued*

*Access to Counsel*, 892 F. Supp. 2d 8, 28 (D.D.C. 2012).  Respondents' refusal to permit

Petitioners to access their counsel warrants injunctive relief.  Respondents' refusal to permit

Petitioners access to counsel creates an actual and imminent threat of injury and irreparably

harms Petitioners.  Petitioners have already initiated legal proceedings with representation by

counsel, yet are being forced to navigate an unfamiliar legal system under coercion by CBP and

without the legal representation to which they are entitled. By being coerced to sign such forms

without advice of counsel and being questioned by CBP in the absence of their attorney,

Petitioners' legal status is being severely prejudiced and Petitioners are being irreparably

harmed.

Petitioners are likely to succeed on the merits of their claims.  Indeed, the Second Circuit

has decided a similar issue now before the Court.  In *Haitian Centers Council, Inc. v. McNary*,

969 F.2d 1326 (2d Cir. 1992), *vacated as moot sub nom. Sale v. Haitian Centers Council, Inc.*,

509 U.S. 918, various organizations and Haitian aliens challenged procedures of the Coast Guard

interdiction program with respect to Haitian refugees.  Under the program, Haitians that fled

their country were apprehended by the Coast Guard and detained on board Coast Guard cutters

and at Guantánamo Bay. The INS interviewed the Haitian refugees and those found to have a "credible" fear of persecution were designated "screened in" and were eligible for transfer to the United States to pursue asylum claims. Those individuals found not to have a credible fear were "screened out" and were returned to Haiti.  Plaintiffs alleged that under the program, members of the Haitian Service Organizations, which attempted to render legal counsel, advocacy, and representation, were unconstitutionally denied access to the detained Haitians.  Noting that the interdicted Haitians are not "some undefined, limitless class of noncitizens who are beyond our territory," but instead an "identifiable group of people" who had been interdicted by Americans and subsequently "detained on territory that is subject to the exclusive control of the United States," the court ultimately upheld a district court order enjoining the Immigration and Nationalization Service from limiting Haitian asylum applicants' contact with counsel while they were detained at Guantanamo Bay.  *Id.* at 1347.  Notably, the court found that plaintiffs were entitled to a preliminary injunction on a showing that they had demonstrated a "fair ground for litigation" – it did not require them to show a likelihood of success on the merits.  *Id.* at 1339. Petitioners here have established a fair ground for litigation and a likelihood of success because they are admissible into the United States based upon a valid immigrant visa issued by the United States.

Second, the balance of the equities unequivocally tips in Petitioners' favor. Petitioners' loss of liberty while being detained in JFK Airport with a valid visa issued by the United States is undeniable.  Petitioners are seeking freedom from confinement; by virtue of federal law, the right to counsel attaches in cases involving the loss of liberty and it is of no matter that Petitioners are not American citizens.  *See, e.g., Saldina v. Thornburg*, 775 F. Supp. 507 (D.

Conn. 1991) (holding that Cuban detainees, who had filed petition for writ of habeas corpus challenging their prolonged detention as excludable aliens, were suffering from "loss of liberty" within meaning of the Criminal Justice Act, and thus were entitled to appointment of counsel in interest of justice so that they could seek habeas corpus relief); *Yick Wo v. Hopkins,* 118 U.S. 356, 369 (1886); *Wong Wing v. United States,* 163 U.S. 228, 238 (1896).

Third, the public's interest weighs in favor of granting a preliminary injunction. The Supreme Court has described habeas corpus as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia,* 372 U.S. 391, 400 (1963), *overruled on other grounds, Coleman v. Thompson,* 501 U.S. 722, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991). Indeed, the essence of habeas corpus is "an attack by a person in custody upon the legality of that custody." *Preiser v. Rodriquez,* 411 U.S. 475, 484 (1973). That custody may be judicially imposed or not. "It may be the result of an **executive order**, an order of the court, or even the act of private parties." *Saldina*, 775 F. Supp at 511 (emphasis added).

Indeed, the notion of the "great writ" as a means to challenge illegal confinement has been an integral part of our common-law heritage at least since the American Colonies achieved independence. *Preiser v. Rodriguez*, 411 U.S. 475, 484-485 (1973). In the same vein, the availability of habeas review in immigration cases is equally well established. *See e.g., Bertrand v. Sava,* 684 F.2d 204, 210 (2d Cir. 1982). Where, as here, "petitioners are attempting to avail themselves of the broad remedy provided by the great writ, **their status as administrative detainees is irrelevant**." *Saldina,* 775 F.Supp. at 511. Under the law, Petitioners are plainly

entitled to meet with their counsel to pursue the remedies due to them pursuant to the writ of habeas corpus.

## <u>CONCLUSION</u>

For the foregoing reasons, the Petitioners respectfully request that the Court grant the Motion in its entirety together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
          January 29, 2017

                                      Respectfully submitted,

                                      THE ABOUSHI LAW FIRM, PLLC.

                                       /s/_____
                                      By: Tahanie A. Aboushi, Esq.
                                      1441 Broadway, Suite 5036
                                      New York, New York 10018
                                      Telephone: (212) 391-8500
                                      Facsimile: (212) 391-8508
                                      Tahanie@aboushi.com